<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JEROME KEMP, | : | Civil No. 06-0197 (GEB) |
| Petitioner, | : | |
| v. | : | **O P I N I O N** |
| PETER C. HARVEY, et al., | : | |
| Respondents. | : | |

**RECEIVED**

**MAR 0 6 2006**

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

**APPEARANCES:**
> Jerome Kemp
> c/o Clinton C. Barlow
> 3287 Shetland Road West
> Jacksonville, Florida 32277

<u>**GARRETT E. BROWN, JR., Chief Judge**</u>

The proceedings in this legal action have been initiated by filing of (1) Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (hereinafter "Petition") and (2) application to proceed <u>in forma pauperis</u>. The Petition (1) bares a caption reading "Clinton C. Barlow c/o Family Member's Mrs. L. Diane Booker Mother / P.O.A. c/o Inmate Jerome T. Kemp vs. The Hon. Peter C. Harvey," (2) is signed solely by Mr. Barlow, and (3) seeks release of Jerome T. Kemp (hereinafter "Kemp"), an inmate currently confined at the Mercer County Correctional Center, Trenton, New Jersey.

Having thoroughly reviewed the Petition, the Court dismisses the Petition without prejudice for lack of jurisdiction.

## FACTUAL BACKGROUND

Kemp's criminal record is unclear from the face of the Petition since, in response to the question "[state] the date upon which sentence was imposed and the terms of the sentence," the Petition (received by the Clerk on January 17, 2006) lists four dates, specifically, October 5, 1997, August 8, 2005, October 22, 2005, and January 6, 2006, thus suggesting the possibility of up to four convictions being challenged in the current action. See Pet. § 5. The Court surmises, however, that the challenged decision(s) was/were rendered by the Trenton Municipal Court and/or the New Jersey Superior Court, Mercer County, see id. §§ 3-4, 12(a)(1-2)13, and resulted in Kemp being sentenced to eighteen months of imprisonment and five months of probation. See id. § 9(b)(2) and (3). In addition, it appears undisputed that the challenged decision(s) is/are being appealed. See id. §§ 8, 9(a)(1-3) ("[w]e are in the process of filing an appeal," "[appeal] is being filed at this time," and "appeal is still pending").

The Petition asserts that Kemp's conviction(s) was/were wrongful because Kemp was either innocent of the criminal conduct(s) charged (one of which appears to be "criminal assault against police of[fic]er," see id. §§ 10(b), 12(a)(2)) or because

Kemp should have been deemed not guilty or unable to stand trial on the grounds of mental incompetence.[1] See id. §§ 6, 9(a)(5)(a), 13 (stating that "he's mentally disturbed," "his mental disorder confuses the trial court," "defendant is too mentally ill to stand trial").   The remainder of the Petition consists of emotional statements aiming to express Mrs. Booker's dissatisfaction with the court and public defense systems of the State of New Jersey. See id. §§ 6(c), 8, 9(a)(d) ("[Kemp's] mother tried to tell [the] judge he's mentally incompetent" but the "court failed to listen to defendant's mother"; while claiming that "[Kemp] had no public defender," the Petition simultaneously alleges that "both public defenders in Trenton municipal court and Mercer County criminal court had coerced and [il]legally forced mentally ill Jerome T.

---

[1]
    In addition, the Petition seems to allege a broad and complex conspiracy on the part of police, prosecution, public defenders and state courts, all of whom aimed to convict (and, perhaps, extort monies from) a mentally incompetent person.   See Pet. §§ 6(b), 9(a)(5)(b), 9(b)(5)(a), 10(d) (stating  that "his mother tried to tell the court but they have deprived her," "after defendant's mother . . . repeatedly tried to advise[] courts of her son's mental disorder, they overlooked her plea[s]," "Trenton municipal trial court had wrongfully take[n] $5000 cash for bond," "the police had failed to advise[] the county and municipal prosecutors of Jerome T. Kemp being mentally ill," "Jerome was wrongfully beaten up by various Trenton police officer[s] that caused him to receive medical treatment," "Jerome Kemp was falsely charged by Trenton police to cover police assaults," "[Kemp] was the only person charged out of several defendants," "other defendants did not go to trial" and "Kemp had taken a police pol[]ygraph test with the Trenton police internal affairs but it was later lost and misplaced by the Trenton police dep[artmen]t to cover up police beat[ings]" since such polygraph would, apparently, exculpate Kemp.

Kemp to plea[] guilty to both crimes that he didn't do" and, thus, "his two P.D. attorney[]s had violated [Kemp] as well"). Although the Petition does not indicate the relief sought and states solely "that is why we have requested the Hon. N.J. State Attorney General to *investigate* this matter," see id. § 12(b)(6) (emphasis supplied), this Court deduces from the foregoing that the Petition challenges either the very fact of Kemp's incarceration or at least the duration of the imposed sentence(s). Accord id. § 1(a-f) (stating that the Petition challenges "a conviction," "a sentence," "prison conditions," "probation" and "civil rights violation"); see also Application to Proceed Without Prepayment of Fees and Affidavit (where, in apparent response to a boilerplate paragraph titled "Notice to Prisoner," there is an entry reading "[b]ecause even now [Kemp] is very mentally ill and do[es]n't understand what he's going through, his Due Process is being violated").

## STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v.

Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). Yet, if compared to complaints drafted by civil rights pro se plaintiffs, "[h]abeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A habeas petition must "specify all the grounds for relief" and set forth "facts supporting each of the grounds thus specified," Habeas Rule 2(c), and "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland, 512 U.S. at 856; see also United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000)

## DISCUSSION

**I.    Habeas Corpus Petitions That Can Be Brought Under § 2241**

A state prisoner may challenge the fact or duration of his/her confinement pursuant to a state conviction only by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. The Petition at hand, however, while challenging the fact of Kemp's incarceration (or the duration of his confinement), is brought under Section 2241, thus stripping this Court of proper jurisdiction since Section 2241 is not an alternative to 28 U.S.C. § 2254. See Felker v. Turpin, 518 U.S. 651, 662 ("authority to grant habeas corpus relief to state prisoners is limited by 28 U.S.C. § 2254, which specifies the conditions under which such relief may be granted to a person in custody pursuant to the

judgment of a state court"); Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001) ("Congress has attached restrictions to Section 2254 proceedings that should not be circumvented by permitting a petitioner to go forward under the more general authority conferred by Section 2241").

While a state prisoner may use Section 2241 to challenge the fact of his/her incarceration, this right arises if--and only if-- 28 U.S.C. § 2254 is shown to be an inadequate or ineffective remedy.[2]  See Swain v. Pressley, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus").  Since the Petition at hand raises no issue that could not be addressed or resolved under Section 2254, this Court lacks jurisdiction under Section 2241.

## II.  Re-characterization of § 2241 Petition as § 2254 One

While this Court lacks jurisdiction to entertain a challenge to the fact of Kemp's incarceration (or the duration of his

---

[2]

While the "inadequate and ineffective" limitation is made part of the statutory language of 28 U.S.C. § 2255, § 2255 is the federal equivalent of the § 2254 state habeas mandate: the provisions are intended to mirror each other in their operative effects.  See Widener v. Smith, 2005 U.S. Dist. LEXIS 33876, at *10 (M.D. Penn. 2005); United States v. Vancol, 916 F. Supp. 372, 377 (D. Del. 1996)(citing Reed v. Farley, 512 U.S. 339, 353 (1974)).

confinement) under Section 2241 for the reasons discussed above, this Court has the power to re-characterize the Petition as petition under 28 U.S.C. § 2254 in order to avoid dismissal for lack of jurisdiction, accord Castro v. United States, 540 U.S. 375, 377 (2003), Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), unless such re-characterization would be futile.  Cf. Bellomo v. United States, 344 F. Supp. 2d 429, 437  (S.D.N.Y. 2004) (finding patent futility in re-characterization of successive Section 2254 petition styled as a Section 2241 one).  With respect to the Petition at hand, such re-characterization would be futile since: (1) the Court also lacks jurisdiction over the Petition due to Mr. Barlow and Mrs. Booker's lack of standing to bring this action; and (2) the statutory requirement of exhaustion set forth in § 2254 is not satisfied in the case at hand.

### A.   Failure to Exhaust State Remedies

A district court may not grant a writ of habeas corpus under § 2254 unless the petitioner has exhausted state court remedies for all grounds presented in the petition or such process is unavailable or ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); Rhines v. Weber, 544 U.S. 269 (2005); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). Specifically, Section 2254 provides in relevant parts:

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State

court shall not be granted unless it appears that –

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)    there is an absence of available State corrective process; or

(ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A) & (B); see also Henderson v. Frank, 155 F.3d 159, 164 (3d Cir. 1998); Lambert, 134 F.3d at 513; Toulson v. Beyer, 987 F.2d 984, 987-89 (3d Cir. 1993).

Section 2254 further provides that "an applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Federal courts have consistently adhered to this exhaustion doctrine "for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Picard v. Connor, 404 U.S. 270, 275 (1971) (citation and internal quotations omitted). Moreover, the statutory scheme of the Antiterrorism and Effective Death Penalty Act "reinforce[d] the importance of [this] 'simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court.'" Rhines, 125 S. Ct. at 1534

(quoting <u>Rose v. Lundy</u>, 455 U.S. 509, 520 (1982)).  Since the exhaustion doctrine requires a petitioner to fairly present each federal claim to all levels of the state court system, including an application for discretionary review by the state's highest court, see <u>Baldwin v. Reese</u>, 541 U.S. 27 (2004); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) ("[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); <u>Burkett v. Love</u>, 89 F.3d 135, 138 (3d Cir. 1996), Kemp must present his claims to the Law Division *and* to the Appellate Division, *plus* file a petition for certification with the New Jersey Supreme Court before submitting a habeas application to this Court. See <u>Toulson</u>, 987 F.2d at 987-89.  And since it is undisputed that Kemp's claims are yet to be addressed by either the Superior Court of New Jersey, Appellate Division, or by the Supreme Court of New Jersey, <u>see</u> Pet. §§ 8, 9(a)(1-3) (stating that "[w]e are in the process of filing an appeal," "[appeal] is being filed at this time," and "appeal is still pending"), this Court shall not entertain the Petition in view of the unsatisfied exhaustion requirement of 28 U.S.C. § 2254.[3]

---

[3]

Moreover, since it appears from the face of the Petition that the current action challenges *multiple* convictions, the Court would not be able to entertain the Petition since, under Habeas Rule 2(e), "[a] petitioner who seeks relief from judgments of more than one state court must file a *separate* petition covering the judgment or judgments of *each* court." (Emphasis supplied.)

### B.    Standing to Bring a <u>Jus</u> <u>Tertii</u> Claim

The Court lacks jurisdiction to entertain the Petition on the grounds that neither Mr. Barlow nor Mrs. Booker has standing to bring this action.

Under the "next friend" doctrine, standing is allowed to a third person so this third person could file and pursue a claim in court on behalf of someone who is unable to do so on his or her own.    The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case in controversy" requirement set forth in the Article III of Constitution.    <u>See</u> <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 154-55 (1990).

The <u>Whitmore</u> Court set out two requirements that should be met by the one seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [(s)he] seeks to litigate" (and it has been further suggested that a "'next friend' must have some significant relationship with the real party in interest"; and (2) "the 'next friend' must provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action."  <u>Id.</u> at 163-64.  The burden is on the "next friend" to justify his/her status and, thereby, to obtain the jurisdiction of the federal courts. <u>See</u> <u>id.</u> at 164.

In view of these requirements, this Court cannot currently recognize either Mr. Barlow or Mrs. Booker as Kemp's "next fiend." With respect to Mr. Barlow, this Court cannot satisfy even the first prong of the <u>Whitmore</u> test since the Court has no information as to what is Mr. Barlow's relationship to Kemp and/or whether Mr. Barlow is "truly dedicated to the best interests" of Kemp: all this Court knows about Mr. Barlow is merely that he is a "family member" who filled the Petition and expressed consent to exercise custody over mailings in this civil action.[4]  Such credentials are clearly insufficient.  <u>Accord</u> <u>Coalition of Clergy v. Bush</u>, 310 F.3d 1153, 157-59 (9th Cir. 2002) (providing a thorough discussion of the "next fiend" caselaw and noting that there should be "a *significant* pre-existing relationship between the prisoner and the putative next friend").

---

[4]     The nature of involvement of Mr. Barlow in this case is not entirely clear to this Court since the only other information about him available to the Court (in addition to the language contained in the caption) is Mr. Barlow's signature affixed to the Declaration accompanying the Petition.    The signature reads "Clinton C. Barlow – family member c/o Power of Att[orne]y Leora D. Booker" (hence presenting a discrepancy from the information provided in the case caption and leaving this Court to guess: (1) whether it is Mr. Barlow who has the power of attorney to act on behalf of Mrs. Booker; and/or (2) whether it is Mrs. Booker who holds the power of attorney to act on behalf of her son, Jerome T. Kemp; and (3) the nature, scope and durability of this/these power(s) of attorney); it sheds no light on the "family member" relationship between Mr. Barlow and Kemp, and leaves the Court to guess the degree of consanguinity, if any, and the duration and closeness of the relationship.

This Court has no similar reservations with respect to Kemp's mother, i.e., the Court has no reason to question Mrs. Booker's dedication to Kemp's best interests. Accord Gilmore v. Utah, 429 U.S. 1012 (1976) (recognizing "next friend" standing of mother on behalf of prisoner); Evans v. Bennett, 440 U.S. 1301 (1979) (same); Hamilton v. Texas, 485 U.S. 1042 (1988) (same). The Court, however, cannot recognize Mrs. Booker as Kemp's "next friend" at this juncture since: (1) it has no evidence verifying Kemp's mental incompetence; and (2) the Court should not conduct inquiries into the matter under the doctrine of abstention which has developed since Younger v. Harris, 401 U.S. 37 (1971), since such inquiry would interfere with the state proceedings currently underway where Kemp's mental competence is challenged.[5]   Therefore, this Court

---

[5]

The abstention doctrine "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). "Younger abstention . . . is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1234 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993). Comity concerns are especially heightened when the ongoing state governmental function is a criminal proceeding. See id. The specific elements for Younger abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989). Since all three Younger criteria are met in the case at hand, this Court must assume that the state procedures will afford an adequate remedy. See Kelm v. Hyatt, 44 F.3d 415, 420 (6th Cir. 1995) (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17 (1987)) ("Initially, we must presume

finds that the second prong of the <u>Whitmore</u> test is unsatisfied with respect to Mrs. Booker. <u>See</u> <u>DeVetsco v. Horn</u>, 53 F.3d 24, 27 (3d Cir. 1995) (following <u>Whitmore</u>, 495 U.S. 149, and denying "next friend" standing to the third persons for "fail[ure] to sustain their burden of establishing . . . mental incompetence [or] other disability on the part of [prisoner]").

## IV.   Application to Proceed <u>In</u> <u>Forma</u> <u>Pauperis</u>

The Petition was filed with this Court together with an Application to Proceed Without Prepayment of Fees (hereinafter "Application"). Same as the Petition, the Application was filled and signed solely by Mr. Barlow. While the Application included responses with respect to Kemp's financial condition, no such information was included about Mr. Barlow and/or Mrs. Booker. <u>See</u> <u>generally</u>, Application.

Section 1914, the filing fee statute, provides in relevant part that "[t]he clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $250 except that on application for a writ of habeas corpus the filing fee shall be $5." 28 U.S.C. § 1914(a).  The accompanying provision, Section 1915, governs applications filed <u>in</u> <u>forma</u> <u>pauperis</u> and provides, in relevant

that the state courts are able to protect the interests of the federal plaintiff.")

part, that leave to proceed _in forma pauperis_ may be granted in any
suit to a litigant "who submits an affidavit that includes a
statement of all assets such [litigant] possesses [if such
affidavit demonstrates] that the [litigant] is unable to pay such
fees or give security therefor." 28 U.S.C. § 1915(a)(1); _see also
Clay v. New York Nat'l Bank_, 2001 U.S. Dist. LEXIS 3209, at *1
(S.D.N.Y. Mar. 21, 2001) (clarifying that, although section 1915(a)
refers to a "statement of all assets such prisoner possesses," this
section has been applied by courts in their review of applications
filed by non-prisoner litigants as well).

Since, for the reasons discussed above, this Court denies Mr.
Barlow and Mrs. Booker standing to proceed in this matter as Kemp's
"next friend(s)," any statement about Kemp's financial condition is
irrelevant for the purpose of determining whether this action could
be brought _in forma pauperis_ (same as it would be unseemly for this
Court to assess a filing fee against Kemp since this Court has no
information one way or another as to whether Kemp desires for or
even knows about this legal action). Consequently, the filing fee
totaling $5 is assessed against Mr. Barlow and Mrs. Booker.[6]

---

[6]

While Habeas Rule 3(b) obligates the Clerk to file a petition
received regardless of whether or not a due filing fee is submitted
together with the petition, it would be indeed anomalous to allow
persons _having no standing_ to usurp judicial resources and bring
claims without payments while obligating every litigant _having
standing_ to pay the fee.

However, being mindful of the Supreme Court's observation that, "while [$5] is . . . an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [$500]," Smith v. Bennett, 365 U.S. 708, 712 (1961), the Court reserves in Mr. Barlow and Mrs. Booker the right to submit--in lieu of the $5 fee--their respective affidavits, *each* of which should: (1) include a statement of all assets that the affiant possesses; and (2) demonstrate to the satisfaction of this Court that the affiant is unable to pay the $5 fee. See Brittain v. Koplove, 1986 U.S. Dist. LEXIS 30165, at *1 (E.D. Pa. Jan. 23, 1986) ("when parties to an action in federal court ask the court to waive the filing fee, . . . *each* [party] must show his or her financial status," emphasis supplied); see also United States v. Holiday, 436 F.2d 1079 (3d Cir. 1971) (leave to proceed in forma pauperis is discretionary with the court and may be denied if the supporting affidavit does not adequately set forth the financial standing of the parties seeking financial assistance of the government).

### III.  CONCLUSION

The Court grants Mr. Barlow and Mrs. Booker provisional leave to proceed <u>in forma pauperis</u> and dismisses the Petition without prejudice for lack of jurisdiction.

An appropriate Order accompanies this Opinion.


_____
**GARRETT E. BROWN, JR.**
**Chief Judge**
**United States District Court**

DATED:  *March 3*, 2006
          Trenton, New Jersey